### STATE ex WAITS v BUSHONG

Ohio Appeals, 3rd Dist, Allen Co·

No 741. Decided Jan 10, 1938

John A. Sieber, Lima, for plaintiff.

Herbert S. Duffy, Columbus, and Frederick V. Cuff, Napoleon, for defendant.

## 480

## OPINION

By GUERNSEY, PJ.

This is an action in habeas corpus filed in this court by the State of Ohio on relation of Benjamin L. Waits as plaintiff against Dr. R. E. Bushong, Superintendent of Lima State Hospital, as defendant.

In his petition the said Benjamin L. Waits alleges that he has been confined in Lima State Hospital since February 14, 1926, and that such confinement is by order of the Probate Court of Franklin County, Ohio. He further alleges that said court was without authority or jurisdiction to so order his confinement. He further alleges that he is sane and is being unlawfully restrained of his liberty by said Dr. R. E. Bushong, Superintendent of said hospital.

In his return of said writ, Dr. R. E. Bushong, Superintendent of Lima State Hospital for the Insane, states that he has the said Benjamin L. Waits in his custody and that he has had custody of said Benjamin Waits since February 24, 1926, by virtue of a certain mittimus issued by one Homer Z. Bostwick, judge of the Probate Court, Franklin County, State of Ohio, on a plea of guilty to shooting with intent to kill one Caroline Waits, and attaches a copy of said mittimus.

The mittimus referred to is in the words and figures following, to-wit:—
"Probate Court, Franklin County, Ohio
No. 50713.
INQUEST OF LUNACY
Application
"In the matter of
Benjamin Waits.
"To the Superintendent of the Lima State Hospital, greeting:
"WHEREAS, all the proceedings necessary to entitle Benjamin Waits to be admitted into the Lima State Hospital, have been had according to law, as will appear by the certified copies of said proceedings hereto attached, application is hereby made for the admission of said Benjamin Waits into said hospital.
"WITNESS my signature and the seal of said Probate Court, at Columbus, Ohio, this 19 day of Feb. A.D. 1926."

It further appears from the evidence introduced in the case that at the January Term 1926, of the Court of Common Pleas of Franklin County, Ohio, that an indictment was returned against said Benjamin Waits charging that on or about the 10th day of September, 1925, within the county of Franklin aforesaid, with a certain pistol then and there loaded with gun powder and one leaden ball, which said pistol, he, the said Benjamin Waits, in his right hand then and there had and held, one Mrs. Benjamin Waits did unlawfully, maliciously and purposely shoot, with intent then and there and thereby her, the said Mrs. Benjamin Waits, to kill.

The evidence further shows that on February 19, 1926, subsequent to the return of said indictment, Caroline Waits (Mrs. Benjamin Waits) filed an affidavit in lunacy in the Probate Court of Franklin County, Ohio, against the said Benjamin Waits, and that subsequent to the filing of said affidavit of lunacy, an inquest was duly held in said court and upon such inquest the said court found that the said Benjamin Waits was then insane, and that he had a legal settlement in Montgomery Township, Franklin County, and that he is and was at the time his insanity occurred, a resident of the State of Ohio. It was further ordered by the court that W. D. Dueschle and R. C. Tarbell, the medical witnesses at said inquest, make out a certificate in said cause according to law and file the same in said court; and it was further ordered that a copy of said certificate together with a copy of the finding of the court be submitted to the superintendent of the Lima State Hospital. Thereafter the medical certificate was duly made and filed in said court as ordered. Following the filing thereof mittimus was issued as hereinbefore mentioned. Thereafter a warrant for the conveyance of said Benjamin Waits to the Lima State Hospital was duly issued by said judge of the Probate Court to the sheriff of Franklin County, Ohio, and said Benjamin Waits was thereafter, pursuant to said warrant, conveyed to said hospital by said sheriff and duly received by the then superintendent thereof, and has since been in the custody of the successive superintendents of said hospital and is now in the custody of Dr. R. E. Bushong as superintendent of said hospital pursuant to said proceedings and commitment.

On submission of this cause it was stipulated by the parties hereto that although the return of the writ states that the mittimus was issued on a plea of guilty of shooting with intent to kill one Caroline Waits, that no plea of guilty was made by

the said Benjamin Waits to such charge. It was further stipulated that the indictment hereinbefore mentioned is still pending against the said Benjamin Waits in the Court of Common Pleas of Franklin County, Ohio, and that without any action whatever by the Court of Common Pleas of Franklin County on said indictment, the said Benjamin Waits was adjudged insane by the Probate Court of Franklin County on inquest commenced by the filing of the affidavit of lunacy above mentioned, and committed to the Lima State Hospital as above set forth. It was further stipulated that the said Benjamin Waits at the time of his commitment to said hospital did not come within any of the classes of persons prescribed in §1985 GC, hereinafter set forth, subject to commitment to said hospital except as he might be within class 4 therein mentioned consisting of persons indicted but found to be insane.

The case was submitted to this court upon the ground that said Benjamin Waits is being unlawfully restrained of his liberty by reason of the fact that his commitment to said hospital by the order of the Probate Court of Franklin County was without authority in law and said court was without jurisdiction to order his commitment and confinement; and the other ground alleged in the petition for the writ, that said Benjamin Waits is sane, was not submitted to or considered and is not decided by this court.

In order to determine whether said commitment and detention is with or without authority in law it is necessary to consider the statutes of the State of Ohio relating to commitments to Lima State Hospital for the Criminal Insane, in effect at the time of the commitment was made in February, 1926.

Lima State Hospital was created by an act of the Legislature passed April 2, 1906, appearing in 98 Ohio Laws, page 236, et seq. entitled an act to provide for the erection, organization and maintenance of the Lima State Hospital for Insane. §2 of said act which remains in its original form as §1985 GC, provides:—

"The Lima State Hospital shall be used for the custody, care, and special treatment of insane persons of the following classes:— 1. Persons who become insane while in a State Reformatory or the Penitentiary. 2. Dangerous insane persons in other state hospitals. 3. Persons accused of crime, but not indicted because of insanity: 4 Persons indicted but found to be insane.

5 Persons acquitted because of insanity. 6. Persons adjudged to be insane who were previously convicted of crime. 7. Such other insane persons as may be directed by law."

Sec 12 of said Act which was later designated as §13577 GC, repealed 113 Ohio Laws at page 123, the subject matter of which is now covered by §13441-1 GC, which became effective on the repeal of said section on July 21, 1929, read as follows:

"When a grand jury upon investigation of a person accused of crime finds such person to be insane, said grand jury shall report such findings to the Court of Common Pleas, and the court shall proceed as provided in §§7240 and 7241 of the Revised Statutes of Ohio. If such person is then found to be insane he shall be committed to the Lima State Hospital until restored to reason."

Sec 13577, GC, in effect at the time the commitment in the case at bar was made, read as follows:—

"If a grand jury upon investigation of the person accused of crime shall find such person to be insane, it shall report such finding to the Court of Common Pleas. Such court shall order a jury to be impanelled to try whether or not the accused is sane at the time of such impaneling, and such court and jury shall proceed in a like manner as provided by law when the question of the sanity of a person indicted for an offense is raised at any time before sentence. If such person is then found to be insane, he shall be committed to the Lima State Hospital until restored to reason. This section shall not be in force and effect until the Lima State Hospital is ready for the reception of inmates as certified to the courts by the Governor and Secretary of State."

Secs 7240 and 7241 of the Revised Statutes of Ohio, referred to in §12 of the Act of April 2, 1906, above mentioned, were, after the adoption of said Act, incorporated in §§13608, 13609 and 13610 GC. §§13608 and 13609 GC, which incorporated the provisions of §7240, Revised Statutes, and §13610 GC, which incorporated the provisions of §7241, Revised Statutes, were repealed, 112 Ohio Laws at page 168 et seq., by act passed April 11, 1927, and new sections of the General Code numbered §§13608 and 13609 GC were enacted in their place, which were repealed by act of the Legislature revising

and codifying the Code of Criminal Procedure of Ohio, passed April 1, 1929, 113 Ohio Laws, 123 et seq. The original sections 13608, 13609 and 13610 GC, incorporating the provisions of §§7240 and 7241, Revised Statutes, were therefore in effect at the time the commitment in question was made.

Sec 13608 GC, then, in part, provided:—
"When the attorney of a person indicted for an offense suggests to the court in which such indictment is pending, and before sentence, that such person is not then sane and the certificate of a reputable physician to that effect is presented to the court such court shall order a jury be impaneled to try whether or not the accused is sane at the time of such impaneling, and that the jury shall be sworn to try the question whether the accused is or is not sane, and a true verdict give according to the law and the evidence, and on the trial the accused shall hold the affirmative."

Sec 13609 GC then, in part provided:—
"That if three-fourths of the jurors provided for in §13608 GC, agree upon a verdict, their finding may be returned as the verdict of such jury."

Sec 13610, GC, then, in part, provided:
"That if the jury find the accused to be not sane, that fact should be certified by the clerk to the Probate Court, and the accused, until restored to reason, shall be dealt with by such court, as upon inquest had."

Sec 13 of the Act providing for the erection, organization and management of the Lima State Hospital for the Insane, above mentioned, provided:

"If any person under indictment appears to be insane, proceedings shall be had as provided for persons not indicted because of insanity. In case such person is found to be insane he shall be committed to the Lima State Hospital until restored to reason, when the superintendent thereof shall proceed as provided in §7243 of the Revised Statutes of Ohio."

This section of the act mentioned was later incorporated in the provisions of §13614 GC, which read as follows:
"If a person under indictment appears to be insane, proceedings shall be had as provided for persons not indicted because of insanity. If such person is found to be insane he shall be committed to the Lima State Hospital until restored to reason when

the superintendent thereof shall notify the prosecuting attorney of the proper county who shall proceed, as provided by law, with the trial of such person under indictment."

Sec 13614 GC, above quoted, remained in effect until repealed by the act to revise and codify the Code of Criminal Procedure of Ohio, 113 Ohio Laws, 123, et seq., passed April 1, 1929, and was in effect when the commitment in the case at bar was made.

Secs 13577, 13608 and 13614, GC, as in effect at the time the commitment in the case at bar was made, were under consideration by the Supreme Court in the case of the State ex Diehlman v Clark, Superintendent of the Lima State Hospital, 102 Oh St page 404, the question under consideration in said case being, "did the Common Pleas Judge presiding at the trial of the prisoner on the charge of murder in the first degree, and later upon the inquest of insanity, have jurisdiction, upon the finding of the jury as to the then insanity of the prisoner, to commit the prisoner upon such verdict to the Lima State Hospital for the Insane?" And in this case it was held:

First. That §§13577 and 13614, GC, are later expressions of the legislative will than §13608 et seq. GC., and where they are in conflict the later section must control.

Second. That §13608 GC relates only to a motion upon the part of the attorneys for the defendant, and gives the prosecuting attorney for the state no right whatsoever to move for an inquest of insanity in the Court of Common Pleas, whereas the later sections §§13577 and 13614 GC give the prosecuting attorney of the county the right to so move.

Third. That the only parts of §13608 et seq. GC adopted by §§13577 and 13614 GC are the parts that relate to the procedure to determine the sanity or insanity of the accused. Said parts in no wise control §§13577 and 13614 GC in the order to commit the person so found to be insane.

Fourth. The order of commitment is a ministerial and mandatory order explicitly written into the statute. The accused could in no wise be prejudiced by an order committing the prisoner made by the Court of Common Pleas, which would be equally mandatory upon the Probate Court were the latter given the custodianship of the prisoner for the mere purpose of commitment.

Fifth. That the fair and reasonable intendment of the General Assembly of Ohio, under the latter, more specific and particu-

lar statutes dealing with persons accused of crime in the Court of Common Pleas was to give to that court full jurisdiction to fully hear and determine the questions, and to make all final orders necessary upon the determination of such questions as provided by said statutes.

Examining the statutes above mentioned, in the light of this decision it is obvious that at the time the inquest on the sanity of the relator was had by the Probate Court of Franklin County and commitment to the Lima State Hospital made, §2 of the Act to provide for the erection, organization and management of the Lima State Hospital for the Insane, which is now without change, known as §1985 GC, provided the classes of persons subject to confinement in such hospital, while §13614 GC, provided for the commitment of a person under indictment who is found to be insane, to said hospital, and §13577, GC provided the method for determining the sanity or insanity of the person under indictment, such question being triable under the provisions of §13577, GC, by a jury impaneled for that purpose by the court of Common Pleas in which the indictment was pending; and that the provisions of these sections were exclusive as to the inquest on the sanity of a person under indictment where, upon a finding and adjudication of insanity, such person was subject to commitment to the Lima State Hospital; or in other words, at the time the relator was committed, to the Lima State Hospital such commitment to such hospital of a person under indictment and not coming within the other classes of cases subject to confinement in such hospital could be legal, made only by the Court of Common Pleas in which such indictment was pending, after trial and verdict of jury in such court that such person was insane.

In the case of the State ex Davey, Governor et v Owen, Judge et, 133 Oh St 96, Ohio Bar, December 20, 1937, in which the provisions of §13441-1 GC, a statute bearing upon the same subject matter, and analogous to §13608, GC, repealed, was under consideration by the court, it is stated in the opinion, that:—

"While the content of some statutes has been changed, it is still the law of this state that the mental capacity of one under indictment must be determined under the provisions of §13441-1, GC, and not by the Probate Judge."

Whether the Probate Court of Franklin County had jurisdiction upon the affidavit, inquest and adjudication of lunacy, to commit the relator to a hospital other than the Lima State Hospital is not in question in this case and is not decided.

For the reasons mentioned, we hold that the Probate Court of Franklin County at the time it committed relator to the Lima State Hospital, was without any jurisdiction whatever to make such commitment to such hospital, and that the relator is unlawfully restrained of his liberty by the superintendent of said hospital under said commitment, and it is therefore ordered that the relator be delivered by the superintendent of said hospital into the custody of the sheriff of Franklin County, Ohio, to be proceeded against according to law.

CROW and KLINGER, JJ, concur.